UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| JUANITA SHANKS, as )<br>Administrator of the Estate )<br>of EUGENE MELCHIOR, II )<br>       )<br>   Plaintiff,    )<br>       )<br>v.      )<br>       )<br>       )<br>RAPPAHANNOCK REGIONAL )<br>JAIL AUTHORITY,   )<br>       )<br>and      )<br>       )<br>RAPPAHANNOCK CREATIVE )<br>HEALTH CARE,    )<br>       )<br>and      )<br>       )<br>PETER C. OBER,   )<br>       )<br>and      )<br>       )<br>HELENA SANGOE, LPN,  )<br>       )<br>and      )<br>       )<br>MEDICAL OFFICER   )<br>T. PAYNE,     )<br>       )<br>and      )<br>       )<br>MEDICAL OFFICER COLEMAN, )<br>       )<br>and      )<br>       )<br>OFFICER XAVIER ESTRADA, )<br>       )<br>   Defendants.   ) | Case No. 3:23-cv-39 |

## COMPLAINT

Plaintiff Juanita Shanks ("Ms. Shanks"), as Administrator of the Estate of Eugene Melchior, II, ("Mr. Melchior"), by counsel and for her Complaint seeking judgment against Defendants Rappahannock Regional Jail Authority ("RRJA"), Rappahannock Creative Health Care ("RCHC"), Peter C. Ober ("Defendant Ober"), Helena Sangoe, LPN ("LPN Sangoe"), Medical Officer T. Payne ("Medical Officer Payne"), Medical Officer Coleman, and Officer Xavier Estrada ("Officer Estrada") (collectively, "Defendants"), respectfully states as follows:

## JURISDICTION AND VENUE

1. This Court is vested with subject matter jurisdiction over Ms. Shanks' 42 U.S.C. § 1983 claim pursuant to 28 U.S.C. §§ 1331, 1343(a)(3), (4). The Court is vested with supplemental jurisdiction over Ms. Shanks' state law claims pursuant to 28 U.S.C. § 1367.

2. Venue is proper pursuant to 28 U.S.C. §§ 1391(b), (c), because one of the defendants, RCHC, resides in Fredericksburg, Virginia, and, upon information and belief, all other Defendants are residents of Virginia.

3. Assignment to the Richmond Division of the Eastern District of Virginia is proper pursuant to Eastern District of Virginia Local Rules 3(B)(4) and 3(C), because the City of Fredericksburg is located within the Richmond Division of the Eastern District of Virginia.

## PARTIES

4. Ms. Shanks is the Administrator of the Estate of Mr. Melchior. At all times relevant, Mr. Melchior was a pretrial detainee being held at the Rappahannock Regional Jail (the "Jail"), located at 1745 Richmond Highway, Stafford, Virginia 22554. Mr. Melchior died on January 21, 2021, from brain death. Ms. Shanks is Mr. Melchior's mother and currently resides in Fredericksburg, Virginia.

5. At all times relevant, RRJA is and was the governing body for the Rappahannock Regional Jail network. RRJA owns and operates the Jail.

6. At all times relevant, RCHC was a general partnership under contract with the RRJA to provide medical care to the inmates and detainees being held at the Jail on all dates discussed *infra*. The contract also required RCHC to develop all necessary policies and procedures to ensure that the medical care provided at the Jail complied with the requirements of federal and state law. At all times relevant, RCHC primarily operated out of and maintained its principal place of business in Fredericksburg, Virginia.

7. At all times relevant, Defendant Ober is and was the managing partner of RCHC and the signatory of the contract under which RCHC was obligated to perform constitutionally adequate medical care to the detainees being housed at the Jail.

8. At all times relevant, LPN Sangoe, Medical Officer Payne, Medical Officer Coleman, and Officer Estrada (collectively, the "Individual Defendants") were employed by RRJA and/or RCHC to, among other things, provide medical care to the inmates and detainees being held at the Jail. At all relevant times, the Individual Defendants were acting within the course and scope of their employment with RRJA and/or RCHC and under color of state law. Medical Officer Payne was the medical officer assigned to the Jail from 6:00 a.m. to 6:00 p.m. on January 18, 2021, and January 19, 2021. Medical Officer Coleman was the medical officer assigned to the Jail from 6:00 p.m. to 6:00 a.m. on January 18, 2021, and January 19, 2021. Officer Estrada was the correctional officer assigned to Mr. Melchior's housing unit on January 18, 2021, and January 19, 2021. Prior to January 5, 2021, LPN Sangoe had become aware of the licensed practical nurse ("LPN") scope of practice requirements articulated in Virginia Code §

54.1-3000; 18 Va. Admin. Code § 90-19-70; 18 Va. Admin. Code § 90-19-230; and, 6 Va. Admin. Code § 15-40-440. The Individual Defendants are sued in their individual capacities.

## FACTUAL ALLEGATIONS

9. On May 22, 2019, RCHC entered into a contract with RRJA to provide medical care to the detainees being housed at the Jail. That contract contemplated that RCHC would provide such care for a two (2) year period of time, beginning on July 1, 2019, and ending on June 30, 2021.

10. In that contract, RCHC expressly assumed a number of duties with respect to the provision of medical care to the Jail's detainees. Indeed, in defining the scope of the medical services to be performed by RCHC, the contract states:

> We will accept supervisory responsibility for all medical staff in performance of their duties in accordance with the standard operation procedures of [the Jail] and the Medical Department's treatment guidelines.

11. Moreover, the contract describes in detail the duties that RCHC and its agents were to perform with respect to the Medical Clinic at the Jail. These duties included (but are not limited to), the following:

    a. Review of all daily sick call logs and nurse's notes for appropriateness of care;

    b. Assisting with the development of a sick call program, to include the development of nursing protocols that ensure that patients in need of follow-up care are referred to an RCHC provider as medically necessary;

    c. The supervision of the Jail's staff, to include ensuring that the Jail's staff rendered medical care in compliance with written protocols;

        d.        Assisting Jail staff with responses to inmate grievances and complaints as they relate to the provision of medical care; and

        e.        Other such duties as will be developed in discovery.

12. The above-referenced duties contained within the May 2019 contract were formulated and drafted, in part, by RCHC from its principal office, located in Fredericksburg, Virginia.

13. At all times relevant, Mr. Melchior was a 37-year-old male being housed as a pretrial detainee at the Jail. Mr. Melchior had a documented medical history of high blood pressure and headaches.

14. On January 5, 2021, Mr. Melchior reported to the Jail's infirmary and was seen by LPN Sangoe. Mr. Melchior complained that he had been experiencing headaches for five (5) days and advised LPN Sangoe that he had not taken his blood pressure medication for a few days. LPN Sangoe recorded Mr. Melchior's blood pressure at 150/87.

15. LPN Sangoe then provided Mr. Melchior blood pressure medication and Tylenol and advised Mr. Melchior to follow up as needed. LPN Sangoe did not, however, contact a physician for guidance or schedule a follow-up appointment for Mr. Melchior. Instead, LPN Sangoe simply made the decision herself not to furnish Mr. Melchior with any additional medical care.

16. On January 18, 2021, Mr. Melchior submitted a Medical Request Form in which Mr. Melchior stated that he had exhausted his supply of Tylenol and that his headaches had worsened. He further complained that he became dizzy when standing and could not tolerate the light in his cell. In the Request Form, Mr. Melchior asked for more Tylenol and expressed his concern that his blood pressure needed to be checked.

17. Mr. Melchior's January 18 Medical Request Form went unaddressed by any staff or medical personnel at the Jail, to include any personnel employed by RCHC.

18. The following day, January 19, 2021, Mr. Melchior submitted a second Medical Request Form. This time, Mr. Melchior complained that his "migraines are so bad I almost pass out when I stand up." He further characterized his headaches as "unbearable" and again stated that his blood pressure needed to be checked. Mr. Melchior further pleaded: "Everyday I fight the feeling of fainting. Please help me."

19. Mr. Melchior's January 19 Medical Request Form went unaddressed by any staff or medical personnel at the Jail, to include any personnel employed by RCHC.

20. Upon information and belief, Mr. Melchior submitted the January 18 and January 19 Medical Request Forms to one or all of the Individual Defendants. Moreover, to the extent that the January 18 and January 19 Medical Request Forms were submitted to a presently unknown member of RRJA or RCHC's staff, RRJA and RCHC are vicariously liable for the state law claims asserted herein under the doctrine of respondeat superior.

21. On January 20, 2021, at approximately 4:00 a.m., correctional officers discovered Mr. Melchior in his cell exhibiting symptoms consistent with a stroke—e.g., lethargy, unintelligible and slurred speech, and limpness to the right side of his body. The officers then called a code blue and transported Mr. Melchior to the infirmary. At some point, the officers also administered Narcan, but Mr. Melchior did not respond to the treatment.

22. Approximately one hour after Mr. Melchior was first discovered in his cell, staff at the Jail called an ambulance.

23. When the EMS crew arrived, they evaluated Mr. Melchior's blood pressure at 220/118 and observed that Mr. Melchior was experiencing significant right-sided weakness

involving both his upper and lower extremities, as well as his face. Mr. Melchior was then transported to a local hospital.

24. Once at the hospital, Mr. Melchior had a CT scan of his head performed. The CT scan showed a left temporal hematoma and vasogenic edema that caused severe mass effect in Mr. Melchior's brain. Additionally, a CTA (cat scan angiography) was performed, which revealed that Mr. Melchior did not have any blood vessel abnormalities that could have caused the hemorrhage.

25. Mr. Melchior was intubated and ultimately transferred to VCU Medical Center in Richmond, Virginia, where he died from brain death on January 21, 2021.

26. Mr. Melchior's medical history and presentation demonstrates that he suffered a hemorrhagic stroke induced by hypertension.

27. Given the amount of edema in his brain and the emergence of consistent headaches as reported by Mr. Melchior to LPN Sangoe on January 5, 2021, the stroke occurred in early January 2021. Throughout the month of January, Mr. Melchior's brain had been resorbing the blood for several weeks and the blood was being replaced by the edema. The edema ultimately caused the medial portion of Mr. Melchior's left temporal lobe to herniate against his midbrain. The prolonged pressure against the midbrain caused irreversible damage and, ultimately, brain death.

28. Had medical personnel at the Jail identified the stroke on or before January 19, 2021, Mr. Melchior would have been transported to a hospital where appropriate surgery could have saved his life. A timely operation would have relieved the mass effect and Mr. Melchior would have survived the stroke.

**COUNT I—State Law Wrongful Death**

**(RRJA, RCHC, DEFENDANT OBER, LPN SANGOE, MEDICAL OFFICER PAYNE, MEDICAL OFFICER COLEMAN, OFFICER ESTRADA)**

29. Ms. Shanks incorporates the foregoing allegations of this Complaint by reference as if fully restated herein.

30. By virtue of their relationship to Mr. Melchior as healthcare providers under the Virginia Medical Malpractice Act, Defendant Ober, LPN Sangoe, Medical Officer Payne, Medical Officer Coleman, and Officer Estrada, while acting within the course and scope of their employment or agency relationship with RRJA and/or RCHC, owed Mr. Melchior a duty to exercise reasonable care in the evaluation and treatment of his stroke and to comply with the standard of care set forth in Virginia Code § 8.01-581.20.[1]

31. Alternatively, Defendant Ober, LPN Sangoe, Medical Officer Payne, Medical Officer Coleman, and Officer Estrada assumed such duties by virtue of the May 2019 contract under which RCHC and its agents and employees were to provide legally adequate medical care to the detainees of the Jail.

32. Upon information and belief, Mr. Melchior submitted the January 18 and January 19 Medical Request Forms to one or all of the Individual Defendants. Moreover, to the extent that the January 18 and January 19 Medical Request Forms were submitted to a presently unknown member of RRJA or RCHC's staff, RRJA and RCHC are vicariously liable for the state law claims asserted herein under the doctrine of respondeat superior.

33. These Defendants breached each of their duties owed to Mr. Melchior and were otherwise negligent and grossly negligent while acting in the course and scope of their

---

[1] To the extent that any of these named Defendants were not medical providers within the meaning of the Virginia Medical Malpractice Act (or did not maintain an active license as of January 2021), this Count proceeds against any such Defendant under a common law negligence theory.

employment with RRJA and/or RCHC by: (i) failing to properly monitor Mr. Melchior's symptoms; (ii) failing to evaluate Mr. Melchior's condition; (iii) failing to implement any orders or protocols to ensure that Mr. Melchior received continuing evaluation and care; (iv) failing to schedule a follow-up appointment with Mr. Melchior after the January 5, 2021 treatment date; (v) failing to respond to the January 18 and January 19 Medical Request Forms; (vi) failing to refer Mr. Melchior to a physician (or to consult with a physician) following the January 5, 2021 infirmary visit; (vii) denying Mr. Melchior access to necessary hospital care, and (viii) by otherwise failing to evaluate and treat Mr. Melchior's worsening stroke-related symptoms.

34. Because these breaches of the standard of care occurred while these defendants were acting within the course and scope of their employment with RRJA and/or RCHC, RRJA and/or RCHC are vicariously liable for the damages proximately caused by those breaches of the standard of care.

35. Additionally, as an LPN, LPN Sangoe's conduct violated the scope of practice provisions set forth in Va. Code Ann. § 54.1-3000, 18 Va. Admin. Code § 90-19-70, 18 Va. Admin. Code § 90-19-230, and 6 Va. Admin. Code § 15-40-440. Those provisions were enacted to protect public safety. Moreover, Mr. Melchior, as a patient and/or inmate at a jail, was an intended beneficiary of those enactments. Additionally, those provisions were specifically intended to prevent the types of injuries sustained here—i.e., poor medical outcomes secondary to LPNs acting beyond the appropriate scope of practice.

36. As a direct and proximate cause of the breaches of the standard of care articulated in this Count, Mr. Melchior's stroke worsened over the course of several weeks to the point of being untreatable and there was a fatal delay in the provision of hospital care that Mr. Melchior desperately needed.

37. Accordingly, as a direct and proximate cause of the breaches of the standard of care articulated in this Count, Ms. Shanks has suffered damages in the form of sorrow and mental anguish, and the loss of Mr. Melchior's comfort, guidance, companionship, society, and advice.

### COUNT II—42 U.S.C. § 1983—Fourteenth Amendment Violation
**(INDIVIDUAL DEFENDANTS)**

38. Ms. Shanks incorporates the foregoing allegations of this Complaint by reference as if fully restated herein.

39. As a pretrial detainee being housed at the Jail, Mr. Melchior had a right under the Fourteenth Amendment to receive constitutionally adequate medical care for his objectively serious medical needs.[2]

40. By virtue of RCHC's contract with RRJA, RCHC and its employees and agents acted under color of state law in performing their medical duties at the Jail.

41. Mr. Melchior's stroke constituted an objectively serious medical need. Moreover, it was an ailment that rendered Mr. Melchior sufficiently ill that any lay person would have recognized an obvious need for medical intervention on his behalf.

42. The Individual Defendants were subjectively aware of the need for patients such as Mr. Melchior to receive timely hospital care given the constellation of symptoms that Mr. Melchior presented to the Jail's staff on at least three occasions: January 5, 2021; January 18, 2021; and January 19, 2021.

43. Upon information and belief, Mr. Melchior submitted the January 18, 2021, and January 19, 2021, Medical Request Forms to one or all of the Individual Defendants.

---

[2] In the alternative, to the extent Mr. Melchior was an inmate rather than a pretrial detainee, this right would have been afforded to him by the Eighth Amendment.

44. As a direct and proximate cause of the Individual Defendants' failure to properly evaluate and treat Mr. Melchior as set forth *supra*, Mr. Melchior was left virtually ignored. This lack of proper treatment allowed the bleeding in Mr. Melchior's brain to worsen over the course of several weeks until it became too late to render life-saving surgery. This untreated deterioration in Mr. Melchior's condition caused him to experience significant pre-death pain and suffering (both physical and mental).

45. Additionally, the Individual Defendants were aware of Mr. Melchior's ongoing headaches and longstanding hypertension and were also aware of the need to regularly monitor and properly assess Mr. Melchior in light of those medical issues. The Individual Defendants were further aware that failing to timely monitor, assess, and treat Mr. Melchior's condition would place him at increased risk for serious injury and/or death.

46. Notwithstanding that knowledge, the Individual Defendants exhibited deliberate indifference to Mr. Melchior's objectively serious medical need in choosing not to properly assess or monitor Mr. Melchior's condition after January 5, 2021. Indeed, none of the Individual Defendants did anything to address the alarming Medical Request Forms submitted by Mr. Melchior on January 18, 2021, and January 19, 2021, when Mr. Melchior's life could have been saved.

47. Furthermore, to the extent the holding of *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), applies to this case, the Individual Defendants acted in a constitutionally unreasonable manner in choosing not to properly assess or monitor Mr. Melchior after January 5, 2021.

48. Additionally, as an LPN, LPN Sangoe's conduct violated the scope of practice provisions set forth in Va. Code Ann. § 54.1-3000, 18 Va. Admin. Code § 90-19-70, 18 Va. Admin. Code § 90-19-230, and 6 Va. Admin. Code § 15-40-440. Those provisions were enacted

to protect public safety. Moreover, Mr. Melchior, as a patient and/or inmate at a jail, was an intended beneficiary of those enactments. Additionally, those provisions were specifically intended to prevent the types of injuries sustained here—i.e., poor medical outcomes secondary to LPNs acting beyond the appropriate scope of practice.

49. As a direct and proximate cause of the unconstitutional conduct articulated in this Count, Mr. Melchior suffered severe pre-death pain and suffering (physical and mental) and died from brain death. Ms. Shanks has also suffered mental and emotional distress and will continue to suffer emotional distress in the future as a direct and proximate result of Defendants' unconstitutional conduct.

### COUNT III—Medical Malpractice Survival Action
### (RRJA, RCHC, DEFENDANT OBER, LPN SANGOE, MEDICAL OFFICER PAYNE, MEDICAL OFFICER COLEMAN, OFFICER ESTRADA)

50. Ms. Shanks incorporates the foregoing allegations of this pleading as if fully set forth except those alleging that the tortious and/or unconstitutional conduct of Defendants directly and proximately caused Mr. Melchior's death. This Count is pled in the alternative to Count I of this pleading and seeks relief under theory of a survival claim for Mr. Melchior's pre-death pain and suffering to the extent that the finder of fact determines the tortious conduct articulated in Count I did not proximately cause Mr. Melchior's death.

51. At all times relevant, RRJA, RCHC, Defendant Ober, LPN Sangoe, Medical Officer Payne, Medical Officer Coleman, and Officer Estrada were healthcare providers obligated to provide Mr. Melchior medical care that complied with the standard of care as defined by the Virginia Medical Malpractice Act.[3]

---

[3] To the extent that any of these named Defendants were not medical providers within the meaning of the Virginia Medical Malpractice Act (or did not maintain an active license as of

52. Alternatively, Defendant Ober, LPN Sangoe, Medical Officer Payne, Medical Officer Coleman, and Officer Estrada assumed such duties by virtue of the May 2019 contract under which RCHC and its agents and employees were to provide legally adequate medical care to the detainees of the Jail.

53. At all times relevant, Mr. Melchior was a pretrial detainee at the Jail who relied on RRJA, RCHC, and their respective staff to provide medical services in accordance with the standard of care and the standards and guidelines set forth both in the May 2019 contract and the Virginia Medical Malpractice Act.

54. At all relevant times, Defendant Ober, LPN Sangoe, Medical Officer Payne, Medical Officer Coleman, and Officer Estrada were members of RRJA and/or RCHC's staff and were agents/employees of these entities acting within the course and scope of their agency/employment relationship with RRJA and/or RCHC.

55. During the period of time spanning (and including) January 5, 2021, to January 19, 2021, these Defendants continuously and repeatedly breached the duties they owed to Mr. Melchior and the governing standards of medical care and by virtue of their voluntarily assumed standards of conduct as set forth in Count I, *supra*.

56. The numerous breaches of the standard of care directly and proximately caused Mr. Melchior to suffer a prolonged stroke and uncontrolled hypertension, causing him to suffer extensive pre-death pain and suffering, loss of quality of life, physical deformity and discomfort, fright and mental anguish, and other damages to be established at trial.

57. Moreover, the tortious acts and omissions these Defendants as described in this Count all occurred during the course and scope of those individuals' employment/agency

---

January 2021), this Count proceeds against any such Defendant under a common law negligence theory.

relationship with RRJA and/or RCHC. Thus, RRJA and/or RCHC remain vicariously liable for the damages Plaintiffs have suffered as a result of those tortious acts and omissions under the doctrine of respondeat superior.

58. The failure of these Defendants to comply with their inherent and assumed legal duties as specified herein directly and proximately caused Mr. Melchior to suffer extensive pre-death pain and suffering, loss of quality of life, physical deformity and discomfort, fright and mental anguish, and other damages to be established at trial.

WHEREFORE, Ms. Shanks demands judgment against Defendants jointly and severally in the sum of TWO MILLION DOLLARS ($2,000,000.00) for compensatory damages, plus interest, punitive damages in the sum of FIVE HUNDRED THOUSAND DOLLARS ($500,000.00), and her fees and costs expended in this action pursuant to 42 U.S.C. § 1988.

**TRIAL BY JURY IS DEMANDED**.

          Respectfully submitted,

          JUANITA SHANKS
          Administrator of the Estate of
          EUGENE MELCHIOR, II

By: _____/s/_____
          Counsel

Jonathan E. Halperin (VSB No. 32698)
Isaac A. McBeth (VSB No. 82400)
Darrell J. Getman (VSB No. 95791)
Halperin Law Center, LLC
4435 Waterfront Drive, Suite 100
Glen Allen, VA 23060
T: (804) 527-0100
F: (804) 597-0209
jonathan@hlc.law
isaac@hlc.law
darrell@hlc.law
*Co-counsel for Plaintiff*

and

Seth Carroll (VSB No. 74745)
Commonwealth Law Group
3311 West Broad Street
Richmond, Virginia 23230
(804) 999-9999
scarroll@hurtinva.com
*Co-counsel for Plaintiff*